## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARK CAMBRICE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-16348** |
| **ROBERT TANNER, WARDEN** | **SECTION: "N"(5)** |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.   Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.   *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Mark Cambrice, is a convicted inmate incarcerated at the B.B. (Sixty) Rayburn Correctional Center in Angie, Louisiana.   On December 20, 2007, he was charged with one count of armed robbery.[1]   On May 13, 2009, a jury found him guilty of first-degree robbery.[2]   On May 22, 2009, he was sentenced to 25 years imprisonment at hard labor

---

[1]  State Rec., Vol. 1 of 10, Bill of Information.

[2]  State Rec., Vol. 1 of 10, Minute Entry, 5/13/09.   He was represented by trial

without benefit of probation, parole or suspension of sentence.[3]    That same day, the State

filed a multiple-offender bill of information charging him as a second-felony offender.    On

May 29, 2009, following a multiple-offender adjudication, the trial court vacated the original

sentence and sentenced him as a second-felony offender to 40 years imprisonment at hard

labor without benefit of probation, parole or suspension of sentence.[4]    His motion to

reconsider the sentence was denied.

On direct appeal, Cambrice argued that the evidence was insufficient to support the

verdict, and the trial court erred in denying his motion to suppress his statement.[5]    On April

26, 2011, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction, but vacated his

multiple-offender sentence for an error patent (*i.e.,* the trial judge did not advise him of the

right to remain silent) and remanded with instructions.[6]    On March 23, 2012, the Louisiana

Supreme Court denied his application for a writ of certiorari.[7]

---

counsel Alden "Bruce" Netterville.

[3]  State Rec., Vol. 1 of 10, Minute Entry, 5/22/09.

[4]  State Rec., Vol. 1 of 10, Minute Entry, 5/29/09.

[5]  Cambrice filed a pro se supplemental brief raising additional issues; however, he later filed a motion to withdraw that brief, which was granted.    *State v. Cambrice*, 2010-KA-26 (La. App. 5 Cir. 4/26/11), 64 So.3d 363, 369 n. 5.

[6]  *State v. Cambrice*, 2010-KA-26 (La. App. 5 Cir. 4/26/11), 64 So.3d 363; State Rec., Vol. 1 of 10.

[7]  *State v. Cambrice*, 2011-KH-1181 (La. 3/23/12), 84 So.3d 568.

Cambrice was resentenced on July 15, 2011.[8]   He was adjudicated a second-felony offender and sentenced to 40 years imprisonment at hard labor without benefit of probation, parole or suspension of sentence.    On his second direct appeal following remand and resentencing, Cambrice argued that his sentence was excessive.    On October 16, 2012, the multiple-offender sentence was affirmed.[9]   On June 14, 2013, the Louisiana Supreme Court denied his writ of certiorari.[10]

On February 3, 2014, he submitted an application for post-conviction relief with the state district court.    In that application, he asserted that (1) the State withheld material and favorable exculpatory evidence; (2) the trial court erred in refusing to give a special defense jury instruction; (3) trial counsel failed to conduct adequate investigation of the surveillance video to prove his actual innocence; and (4) appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness with regard to Cambrice's actual-innocence assertion.[11] On July 15, 2014, the state district court denied relief on the merits.[12]   On or about August 14, 2014, Cambrice, pro se, filed his related application for supervisory writ of review from

---

[8]   State Rec., Vol. 1 of 10, Minute Entry, 7/15/11.    On July 20, 2011, attorney Martin E. Regan enrolled on Cambrice's behalf for purposes of appeal.

[9]   *State v. Cambrice*, 12-KA-60 (La. App. 5 Cir. 10/16/12), 102 So.3d 931.

[10]   *State v. Cambrice*, 2012-K-2451 (La. 6/14/13), 118 So.3d 1078.

[11]   State Rec., Vol. 1 of 10, Application for Post-Conviction Relief.

[12]   State Rec., Vol. 2 of 10, State District Court Order, 7/15/14.

the district court's ruling.    His argument primarily focused on the suppression of the video surveillance evidence; however, he also referenced his claims regarding special jury instructions and ineffective assistance of trial and appellate counsel.    On October 15, 2014, the Louisiana Fifth Circuit Court of Appeal granted the writ "for the purpose of remanding this matter to the trial court for an evidentiary hearing on relator's claims raised in his application for post-conviction relief."[13]    The Louisiana Fifth Circuit explained:

> In this *pro se* writ application, relator seeks review of the trial court's denial of his application for post-conviction relief. Relator argues that the trial judge erred in failing to hold an evidentiary hearing pursuant to La. C.Cr.P. art. 930 to consider the claims raised in relator's application for post-conviction relief. Relator's argument in this Court focuses on video surveillance footage that he claims proves his actual innocence in this case.
>
> La. C.Cr.P. art. 930(A) provides that "[a]n evidentiary hearing for the taking of testimony or other evidence shall be ordered whenever there are questions of fact which cannot properly be resolved pursuant to Article 928 and 929." In this case, upon consideration of relator's application to this Court, we find that there are questions of fact concerning the video surveillance footage at issue that cannot be properly resolved pursuant to a summary disposition.

On September 10, 2014, the trial court allowed new counsel, J. Thomas Beasley, to enroll on Cambrice's behalf.    After several continuances, on June 24, 2015, the state district court held an evidentiary hearing as directed where Cambrice testified on his own behalf and Detective Richard Broussard testified for the State.    The district court took the matter under submission and gave the State and defense a timeline to submit memoranda in

---

[13]  State Rec., Vol. 2 of 10, *State v. Cambrice*, 14-KH-613 (La. App. 5 Cir. Oct. 15, 2014) (Chaisson, J. Dissents) (unpublished writ ruling).

support of their positions.    After reviewing all the evidence submitted, the state district court denied post-conviction relief on August 7, 2015.[14]    The district court noted that the special jury instruction claim was no longer an issue as it was previously denied by the court in July 2014 as procedurally barred.    As for the remaining claims (*Brady* and ineffective assistance of counsel during trial and appeal), the state district court issued a written order denying those claims on the merits.

Counsel on his behalf filed a related supervisory writ application with the Louisiana Fifth Circuit asserting several issues and designated assignments of error.    The issues set forth concerned the State's failure to produce exculpatory evidence pursuant to *Brady* and ineffective assistance of trial counsel.    The designated assignments of error were as follows:    (1) the district court conducted an evidentiary hearing not in compliance with the Court's purpose for remand; (2) the district court erred by admitting "other evidence" not previously part of the trial evidence into the evidentiary proceedings; and (3) the district court erred in denying "due process" of law to the defense.[15]    On November 30, 2015, Cambrice's related supervisory writ application was denied.    The appellate court reasoned that he failed to raise a contemporaneous objection with regard to claim two, and that claims

---

[14]    State Rec., Vol. 2 of 10, Order denying PCR signed August 4, 2015 and issued August 7, 2015.

[15]    State Rec., Vol. 8 of 10, Supervisory Writ Application to the Louisiana Fifth Circuit No. 2015-KH-665, pp. 7-8; R.pp. 2258, 2259.

one and three were without merit.[16]    Counsel on his behalf then filed a related supervisory

writ application with the Louisiana Supreme Court asserting the same claims for relief.[17]

On October 17, 2016, the Louisiana Supreme Court likewise denied relief.    By per curiam,

the Louisiana Supreme Court concluded:

> Relator fails to show the state withheld material exculpatory evidence in
> violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
> (1963) and/or that he received ineffective assistance of counsel under the
> standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d
> 674 (1984). We attach hereto and make a part hereof the District Court's
> written reasons, issued August 7, 2015, denying relief. *See also State v.
> Cambrice*, 15-0665 (La. App. 5 Cir. 11/30/15) (unpub'd) ("First, we note that
> defendant did not lodge an objection to the admission of the 'other evidence'
> of which he now complains. A defendant cannot avail himself of an alleged
> error unless he made a contemporaneous objection at the time of the error. La.
> C.Cr.P. art. 841(A); *State v. Patin*, 13-618, p. 11 (La. App. 5 Cir. 9/24/14), 150
> So.3d 435, 441. Further, our review of the transcript does not reveal that the
> trial court failed to conduct the evidentiary hearing in compliance with this
> Court's purpose on remand or that the defense was denied due process.").[18]

On or about November 4, 2016, Cambrice filed his federal application for *habeas

corpus* relief.[19]    In that application, he raises four grounds for relief:    (1) the State

withheld material exculpatory evidence favorable to him; (2) the post-conviction evidentiary

---

[16]  State Rec., Vol. 8 of 10, *State v. Cambrice*, 2015-KH-665 (La. App. 5 Cir. Nov. 30,
2015) (unpublished writ ruling).

[17]  State Rec., Vol. 10 of 10, Louisiana Supreme Court Supervisory Writ Application
No. 2015-KP-2362.

[18]  *State v. Cambrice*, 2015-KP-2362 (La. 10/17/16), 202 So.3d 482.

[19]  Rec. Doc. 4, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

hearing was not conducted in compliance with the purpose of the appellate court's remand order; (3) the trial court refused to give the special jury instruction requested by the defense; and (4) trial counsel was ineffective for failing to adequately investigate his actual-innocence claim and appellate counsel was ineffective for failing to assert ineffective assistance of trial counsel in this regard on direct appeal.    The State concedes that the federal application is timely, but argues that claim three and part of claim four, with respect to ineffective assistance on appeal, is unexhausted and procedurally defaulted, and the remaining claims should be denied as meritless or not cognizable on federal habeas review.[20]    Cambrice filed an objection to the State's response.[21]    He also filed a motion to stay the federal proceedings in order to permit him to exhaust claim three in the state courts.[22]    The State opposes the motion to stay on grounds that the claims are not only unexhausted but procedurally defaulted, and therefore he is not entitled to a stay of the proceedings.[23]    Cambrice filed an objection to the State's response regarding the motion to stay.[24]

---

[20]  Rec. Doc. 11.

[21]  Rec. Doc. 12.

[22]  Rec. Doc. 13.

[23]  Rec. Doc. 15.

[24]  Rec. Doc. 16.

**Facts**

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts as

follows:

> On September 26, 2007, at approximately 3:15 a.m., Deputy Jesse Dormoy of
> the Jefferson Parish Sheriff's Office responded to a call regarding an armed
> robbery at a Shell gas station located at 500 Lapalco Boulevard in Gretna,
> Louisiana. [25]   After arriving at the scene, Deputy Dormoy interviewed the
> cashier at the Shell station, reviewed a video surveillance tape, and
> interviewed the cashier of a Chevron gas station across the street, who was
> also able to provide information regarding the incident at the Shell station. [26]
>
> Cheri Caire was working as a cashier at the Chevron station located at the
> intersection of Wall Blvd. and Lapalco Blvd., across the street from the Shell
> station, during the early morning hours of September 26, 2007. Sometime
> during the middle of her shift, which began at 10:00 p.m. and ended at 6:00
> a.m., Ms. Caire was outside sweeping the parking lot and picking up garbage
> when a metallic green Mustang pulled into the station. Because the vehicle
> pulled up so fast, Ms. Caire dropped the broom and dustpan in the parking lot,
> went inside the store, and locked the door. The driver of the green Mustang
> approached and asked Ms. Caire to open the door. When Ms. Caire refused and
> told him to go to the window, the driver of the vehicle persisted, indicating
> that he wanted something to drink. When Ms. Caire again refused to open the
> door, the driver asked Ms. Caire if the Shell station across the street was open,
> and Ms. Caire responded affirmatively. The driver returned to his vehicle, and
> Ms. Caire observed the green Mustang proceed to the Shell station across the
> street.
>
> Francis Glapion was working as an overnight cashier at the Shell station
> located at the intersection of Wall Blvd. and Lapalco Blvd. during the early

---

[25]   The date of the armed robbery noted in the transcript of Deputy Dormoy's
testimony is September 26, 2008. However, the bill of information indicates that the armed
robbery of the Shell station occurred on September 26, 2007.

[26]   The next day, the nightshift officers who responded to the scene reported to
Sergeant John Carroll, a shift supervisor in the Armed Robbery Division of the Jefferson
Parish Sheriff's Office, and provided him with a copy of the surveillance video.

morning hours of September 26, 2007. At approximately 3:15 a.m., Ms. Glapion was sitting at the register when a man entered the store, greeted her, and walked towards the cooler. When the man returned to the register, he said "[l]ook here, this is a robbery." Ms. Glapion looked up and saw that the man had a black gun in a little black pouch. She testified that both the inside of the Shell station and the drive-up area near the pumps were well lit. Ms. Glapion gave the man the money in her drawer. After the man left, Ms. Glapion called her supervisor and then called the police, who arrived shortly thereafter. Ms. Glapion's supervisor provided the police with a copy of the Shell station surveillance video.

Approximately one week later, in the early morning hours of October 4, 2007, Deputy Tammy Dore–Howard of the Jefferson Parish Sheriff's Office was on night patrol in Harvey when she conducted a traffic stop on a green Ford Mustang. Defendant was driving the Mustang and there were two other passengers in the vehicle. Deputy Dore–Howard conducted a names check through NCIC (National Crime Information Center), which revealed that defendant and both passengers had several attachments for their arrest. At approximately 3:00 a.m., Deputy Dore–Howard placed defendant and his passengers under arrest and transported them to the Jefferson Parish Correctional Center. Deputy Dore–Howard, noting that the green Mustang matched the description of a vehicle associated with a prior incident of armed robbery on Lapalco Blvd., notified her sergeant and the Robbery Division of the Jefferson Parish Sheriff's Office. Deputy Dore–Howard did not find a gun, a black pouch, or any other evidence related to the armed robbery that occurred the previous week in defendant's possession or in the vehicle, and the vehicle was left at the scene of the traffic stop.

Sergeant John Carroll of the Jefferson Parish's Sheriff's Office subsequently received a report from the Second District night shift advising that a black male driving a metallic green Mustang matching the description of the vehicle from the Shell station armed robbery had been arrested. Sergeant Carroll conducted a computer check on defendant and compared his physical description to the description of the suspect who had robbed the Shell station. The physical description of defendant matched that of the perpetrator of the Shell station robbery. Sergeant Carroll also pulled an AFIS (Automated Fingerprint Identification System) photograph of defendant and compared it to the still photographs compiled from the surveillance video of the Shell station robbery. Sergeant Carroll determined that the photographs "looked like the same person."

Sergeant Carroll obtained an address for defendant and, upon arrival, observed a metallic green Mustang in the driveway of the residence. Sergeant Carroll interviewed defendant's niece and sister and determined that the Mustang was registered to defendant's niece. After receiving verbal consent, Sergeant Carroll conducted a cursory search of the house and the green Mustang. Sergeant Carroll did not find a black gun or a black bag during his search. Defendant's niece and sister further identified defendant as the person pictured in the still photographs compiled from the surveillance video of the robbery.[27]

At approximately 3:00 p.m. on October 4, 2007, Sergeant Carroll went to the Jefferson Parish Correctional Center and located defendant, who was incarcerated on the unrelated attachments. Defendant agreed to speak with Sergeant Carroll and accompanied him to the Detective Bureau. Sergeant Carroll read defendant his rights and advised defendant that he was under investigation for armed robbery. Defendant indicated that he understood his rights, and subsequently waived his rights and agreed to make a statement and answer questions. Sergeant Carroll produced the still photographs made from the surveillance video and defendant identified himself as the person depicted in the photographs. Defendant also gave a recorded statement.

The following day, Sergeant Carroll met with the victim, Ms. Glapion, and showed her a photographic lineup that included defendant's picture. Ms. Glapion positively, and without hesitation, identified defendant as the perpetrator who robbed her. During this interview with Sergeant Carroll, Ms. Glapion again indicated that the perpetrator had a gun, and described the gun as a black revolver.

At trial, Ms. Glapion identified defendant as the person depicted in the surveillance video and the still photographs obtained from the surveillance video. Ms. Glapion also identified the black bag in the still photographs as "the

---

[27] At the July 25, 2008 suppression hearing, Sergeant Carroll testified that he met with members of defendant's family and asked them to view the still photographs made from the surveillance video. When Sergeant Carroll asked defendant's sister and niece if they recognized the gentleman in the photographs, they responded affirmatively. Sergeant Carroll testified that defendant's niece and sister signed and dated the back of the photograph indicating their identification. Finally, Sergeant Carroll testified that he did not use any force, coercion, or intimidation, or make any promises, in order to obtain the identifications.

bag with the gun." Ms. Glapion testified that the person in the surveillance video was the person who robbed her on September 26, 2007. Finally, Ms. Glapion testified that she had picked defendant out of a photographic lineup "[b]ecause that's the person that I recognized from the robbery." In court, Ms. Glapion positively identified defendant as the perpetrator of the robbery.

In direct contradiction to the testimony of Ms. Glapion, Sergeant Carroll, and Ms. Caire, and the recorded statement that he gave on October 4, 2007, defendant testified at trial that he stopped at the Shell station on his way to work to put gas in his green Infiniti, and that he had a black bag but did not brandish a gun. Defendant testified that he did not rob Ms. Glapion at the Shell station. Defendant further testified that after he was arrested for outstanding traffic attachments, he gave a statement to Sergeant Carroll at the Detective Bureau. Defendant testified, however, that the statement he gave to Sergeant Carroll was "not accurate at all" and that he "just had to tell him something, so [he] could get it over with."

Defendant testified that the interview with Sergeant Carroll made him nervous and scared, and that Sergeant Carroll advised defendant that he could be charged with other crimes, including robbery of the Chevron station across the street, but that he could run them concurrently if defendant confessed. On cross-examination, defendant admitted that he was the person depicted in the still photographs from the surveillance video but again indicated that he was at the Shell station pumping gas. Defendant also admitted that he had prior convictions for attempted possession of a firearm and possession of cocaine. Finally, defendant testified that he lied to Sergeant Carroll during the October 4, 2007 interview to get out of other charges.[28]

### Exhaustion and Procedural Default: (Claim 3-special jury instruction and Claim 4-ineffective assistance on appeal)

Initially, the Court must determine whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court, *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in

---

[28] *State v. Cambrice*, 64 So.3d at 366-369 (footnotes in original).

"procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).    As previously noted, the State concedes the application is timely. However, the State maintains that claims three and four (in part) may not be reviewed by this Court given Cambrice's failure to exhaust and technical procedural default since he can no longer bring those claims in the state courts.    Cambrice's motion to stay addresses only claim three, which he admits his attorney failed to raise in the Louisiana Supreme Court.[29]

"Section 2254(b) requires that prisoners must ordinarily exhaust state court remedies before filing for federal habeas relief." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) ("A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief.") (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles v. Johnson*, 127 F.3d 409, 419 (5th Cir. 1997).    "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Pliler v. Ford*, 542 U.S. 225, 233 (2004); *Rose*, 455 U.S. at 519-20).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the *highest* state court."    *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)) (emphasis added).    "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of

---

[29]  Rec. Doc. 13, p. 2.

the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.    *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."    *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78).    "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application."    *Id.* (citing *Nobles*, 127 F.3d at 420.    It is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

The State argues that Cambrice failed to exhaust the claims fully by presenting them specifically to the Louisiana Supreme Court.    For the post-conviction hearing and beyond, Cambrice had retained private counsel.    Mr. Beasley handled the post-conviction hearing and also filed supervisory writ applications on Cambrice's behalf following the evidentiary hearing and state district court judgment.    As the State correctly notes, the counseled supervisory writ application filed with the Louisiana Supreme Court does not raise either the substantive specific jury-instruction claim or the ineffective-assistance-of-appellate-counsel claim previously raised in his uniform application for post-conviction relief.

Rather, counsel on his behalf assigned as error: (1) the state district court failed to conduct the evidentiary hearing in compliance with the purpose of the remand order; (2) the state district court erred in admitting other evidence not introduced at trial; and (3) Cambrice was denied due process based on the state district court's failing to find that exculpatory evidence was withheld by the State or that trial counsel was ineffective for failing to investigate his actual innocence.[30]    Cambrice does not dispute that his attorney omitted these claims in the Louisiana Supreme Court proceedings.    The Court therefore finds claim three and part of claim four unexhausted.

Further, as the State notes in its response, Cambrice's failure to exhaust his claims in state court presents an additional problem and basis for dismissal of this federal habeas claim, *i.e.*, a procedural bar in federal court.    If, as is the case here, a "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are likewise considered defaulted in federal court. *Nobles v. Johnson*, 127 F.3d at 420 (internal quotation marks omitted).    There is little doubt that any future attempt to exhaust this claim would result in a procedural bar by the state courts, because any new state post-conviction application would be both repetitive (La. Code Crim. P. art. 930.4) and untimely (La. Code Crim. P. art. 930.8).    In fact, the Louisiana

---

[30]  State Rec., Vol. 10 of 10, Louisiana Supreme Court Supervisory Writ Application No. 15-KP-2362, R.p. 2757.

Supreme Court has already advised Cambrice that he is no longer entitled to collateral review:

> Relator has now fully litigated his application for post-conviction relief in state court. Similar to federal habeas relief, *see* 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La. C.Cr.P. art. 930.4 and within the limitations period as set out in La. C.Cr.P. art. 930.8. Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory. Relator's claims have now been fully litigated accord with La. C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review. The District Court is ordered to record a minute entry consistent with this per curiam.[31]

As a result, federal relief is barred unless Cambrice demonstrates either (1) the existence of "cause" for his default and resulting "prejudice" or (2) that the Court's failure to address the claims would result in a "fundamental miscarriage of justice."    *See*, *e.g.*, *Bagwell v. Dretke*, 372 F.3d 748, 756-57 (5th Cir. 2004).    To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.    *Murray v. Carrier*, 477 U.S. 478, 488 (1986).    The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.    *Id.* at 486.    Cambrice's only asserted justification for his procedural default of the claims—that he was unaware of the omission at the time of the

---

[31] *State v. Cambrice*, 15-KP-2362 (La. 10/17/16), 202 So.3d 482.

Louisiana Supreme Court filing—does not satisfy his burden to show cause. Cambrice has not established cause for his default, and "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Additionally, he has not demonstrated that a fundamental miscarriage of justice will occur if the claims are not considered by this Court. In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). To show factual innocence, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *see Nobles*, 127 F.3d at 423 n. 33 (actual-innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").

Cambrice asserts he is actually innocent based on camera footage recorded from behind the attendant counter that was not shown to the jury. As explained in more detail later in this report, the Court has reviewed and rejected his *Brady* claim with respect to this alleged newly discovered evidence because it was disclosed to the defense before trial.

Cambrice asserts and the record shows that the particular footage at issue was not presented to the jury at trial.    However, the evidence he submits is hardly the sort of compelling evidence needed to satisfy the rigorous burden of proving actual innocence.

At trial, the State presented surveillance video of the incident from the camera located in front of the attendant (from the patron side of the counter) to the jury.    Cambrice argues that the same footage of the incident from an angle behind the counter was captured on a different camera in the station and memorialized in sequential still photographs that were not shown to the jury.    He claims this angle refutes the victim's testimony that Cambrice robbed the store while armed with a gun, and that it corroborates his version that he simply exchanged money with the clerk for his gas purchase and left the store.    Cambrice advanced this defense theory at trial when he testified as a witness.    However, his own testimony from the evidentiary hearing on collateral review shows that he has not met the difficult burden of proving factual innocence based on the alleged new evidence, which appears to be just as inculpatory as the video shown at trial.    His entirely subjective assertions as to what the video purportedly shows were challenged and easily refuted by his own admission during his cross-examination at the evidentiary hearing.    The different camera angle footage reveals the same interaction between the attendant and Cambrice. In this case, the jury obviously weighed not only the surveillance footage, but also the victim's testimony, Cambrice's confession to police, and his testimony at trial.

Cambrice has not shown by this new evidence that, as a factual matter, he is actually

innocent of the crime for which he was convicted.    He has not demonstrated that any miscarriage of justice will result from this Court's failure to consider his defaulted claims regarding the trial court's failure to give a specific jury instruction and ineffective assistance of appellate counsel.    Accordingly, these claims should be dismissed as procedurally defaulted.

In an abundance of caution, the Court notes that even if he could overcome the procedural default, the claims lack merit.    As to the denial of the special jury-charge request, any claim that the trial court's actions violated state law fail as non-cognizable on federal habeas review.    "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).    A federal court may not grant habeas relief based on an alleged error in the interpretation or application of state law. *Estelle*, 502 U.S. at 68; *see also Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law") (citation and quotation omitted); *Swarthout v. Cooke*, 562 U.S. 216, 218 (2011) (federal habeas review does not lie for errors of state law).    Furthermore, to the extent he raises a federal constitutional issue, the record is clear that he was not denied a fair trial.    Defense counsel moved for inclusion of two special jury charges with regard to confessions at the outset of trial;[32]  however, the trial court deferred ruling on the matter

---

[32]  State Rec., Vol. 5 of 10, Trial Transcript, pp. 33-42, R.pp. 1352-1361.

and following the jury-charge conference, defense counsel confirmed twice on the record that he was satisfied with the proposed jury charges as modified.[33]    Indeed, the state district court determined that the claim was procedurally barred on post-conviction review under state law for lack of any contemporaneous objection by the defense.    Under the circumstances, the trial court's failure to include the initially proposed special jury charges was not erroneous, and did not deny Cambrice a fair trial.

With respect to appellate counsel, Cambrice argues that, despite his insistence that she do so, counsel failed to investigate his claim of ineffective assistance of trial counsel with respect to his actual innocence on direct appeal.    To prevail on claims of ineffective assistance of counsel, a claimant must prove: (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that his counsel's ineffective assistance was prejudicial.    *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).    Cambrice cannot establish deficient performance or prejudice under *Strickland* based on the decision by appellate counsel not to pursue this claim on appeal.    By his own admission, the claim was not developed enough to raise it on direct appeal.    For this very reason a claim of ineffective assistance of counsel is typically relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal.    *State v. Miller*, 99-0192 (La. 9/6/00), 776 So.2d 396, 411, *cert. denied*,

---

[33]    *Id.*, Trial Transcript (Day 2), pp. 10-11, R.pp. 1455-1456; *see also* State Rec., Vol. 6 of 10, Transcript pp. 123-125, R.pp. 1572-1574.

531 U.S. 1194 (2001).    Furthermore, appellate counsel need not argue every nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal.    *Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).    As appellate counsel is bound to focus on arguments most likely to succeed on appeal, counsel will not be found constitutionally ineffective for failure to raise every conceivable issue—a path surely destined to obscure the truly meritorious claims.    *Smith*, 538 U.S. at 288; *Jones*, 463 U.S. at 754.    The claim Cambrice sought to raise regarding ineffective assistance of trial counsel was undeveloped and speculative and therefore not appropriate for direct appeal. Furthermore, the claim had little chance of success as opposed to the stronger claims of insufficiency of the evidence and suppression of his statement that counsel asserted on appeal.    Thus, it was not ineffective for his appellate counsel not to raise this particular claim on direct appeal.    Cambrice is not entitled to federal habeas corpus relief on this claim.

## Motion to Stay

Cambrice filed a motion to stay the federal proceedings in order to permit him to fully exhaust the claims in the state courts.    He concedes in the motion that he failed to exhaust his claims fully through the Louisiana Supreme Court[34]

---

[34]  His motion to stay addresses only claim three, but presumably applies as well to claim four, in part, which the State argued was not exhausted and also procedurally defaulted.

In *Pliler v. Ford*, 542 U.S. 225, 227 (2004), the Supreme Court addressed the availability of a stay-and-abeyance in connection with "mixed petitions" containing both exhausted and unexhausted claims. *Id.* The *Pliler* Court ultimately reiterated the long-standing directive that a mixed petition be dismissed without prejudice to require exhaustion. *Id.* at 233. The Supreme Court recognized that a petitioner has two choices when faced with dismissal of a mixed petition: (1) return to the state courts to exhaust his claims in full; or (2) amend or resubmit his petition to raise only exhausted claims in the federal district court. *Id.*

In *Rhines v. Weber*, 544 U.S. 269, 278 (2005), the Court cautioned that a stay-and-abeyance "should be available only in limited circumstances," and is appropriate only when the district court determines that there was "good cause" for the failure to exhaust. *Id.* at 277. However, as previously discussed, the Court has found no good cause exists for the failure to exhaust. Further, the Court has determined that the claims are procedurally defaulted; thus, a stay would be ineffective and inappropriate. *Rhines*, 544 U.S. at 277; *Kinard v. Palakovich*, No. 05–2804, 2006 WL 3366168, at *21 (E.D. Pa. Nov. 16, 2006) (finding a stay inappropriate where "proper exhaustion [is] impossible"). For this reason, his motion for stay should be denied.

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure

questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."    *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v.*

*Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

**Analysis**

*A. Withholding of Material Exculpatory Evidence Favorable to Cambrice*

Cambrice contends the State suppressed material, favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).    In support of his *Brady* claim, Cambrice argues that the State withheld certain footage from the video surveillance recordings of him at the scene that proved his innocence.    The state courts rejected the claim after holding a full evidentiary hearing on post-conviction relief.    The Louisiana Supreme Court, in its per curiam denial, incorporated the state district court's order denying relief, and held that Cambrice failed to show that the state withheld material exculpatory evidence in violation of *Brady*.    The state district court reasoned that "the evidence established at the evidentiary hearing conclusively demonstrates that the evidence on the disc was not withheld from the defense prior to trial... and that the photographic and video evidence on the disc was not exculpatory."[35]

In *Brady*, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."    *Brady*, 373 U.S. at 87.    The prosecutor's duty to disclose exists even if no request has been made by the defendant for the material.    *Strickler v. Greene*, 527

---

[35]    State Rec., Vol. 10 of 10, State District Court Order, 8/7/15.

U.S. 263, 280 (1999) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)); *Hall v. Thaler*, 504 F. Appx. 269, 273 (5th Cir. 2012) (citing *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)). "*Brady* material" encompasses both exculpatory and impeachment evidence.     *Strickler*, 527 U.S. at 280 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)); *United States v. Valas*, 822 F.3d 228, 236-37 (5th Cir. 2016).     *Brady* claims involve "the discovery, after trial of information which had been known to the prosecution but unknown to the defense." *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (quoting *Agurs*, 427 U.S. at 103); *accord Reed v. Stephens*, 739 F.3d 753, 783 (5th Cir. 2014).     To establish a *Brady* violation, a defendant must show that the evidence is favorable to the accused either because it is exculpatory or impeaching, that the evidence was suppressed by the State, and that prejudice resulted from the non-disclosure.     *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (citing *Strickler*, 527 U.S. at 281-82); *Reed*, 739 F.3d at 782.     The *Brady* materiality determination is a mixed question of law and fact.     *Cobb v. Thaler*, 682 F.3d 364, 377 (5th Cir. 2012). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The video surveillance was the focus of the evidentiary hearing.     The disc containing the footage was introduced as evidence at trial, but Cambrice maintains that the video contained additional footage in the form of still images he had not seen before and which had not been shown to the jury.     The surveillance video footage at issue included different camera views of the incident—one angle from behind the attendant's counter (Cam 2) and

one from the patron side of the counter in front of the attendant's counter (Cam 3).    The disc introduced at trial as S-4 contained three separate files.    The first two files included a series of sequential, still photographs from both camera angles designated as Cam 2 and Cam 3.    The third file was the entire video segment apparently from the same angle as the Cam 3 photographs.    The segment encompasses the approximately 38-second incident (time stamped 3:15:52 through 3:16:30), but is referred to in the state court record as either an "eight or nine-second video" due to the speed at which it was played at trial.[36]

At the post-conviction evidentiary hearing, Cambrice stated he obtained the video and still photographs from the Clerk of Court's Office in response to a request he made during the post-conviction process.[37]    As his counsel stated at the evidentiary hearing, "the DVD provided to Mr. Cambrice... it's the same DVD that the State has.    I'd like to offer this to show what he received was the same what was already in the record Judge."[38]    However, Cambrice asserts he was unaware that footage from camera angle 2 existed because it was never disclosed to him.    He claims the undisclosed still photographs from that angle support his version that he merely paid for his gas and left the premises.    He alleges the photographs depict him walking to the counter, exchanging money with the cashier in

---

[36]    *See* State Rec., Vol. 8 of 10, PCR Hearing Transcript, 6/24/15, p. 40, R.p. 2320 (Defense Stipulation).

[37]    *Id*. at 16-17.

[38]    State Rec., Vol. 8 of 10, PCR Hearing Transcript, p. 18; *see also* p. 23.

payment, and even a receipt being printed.    He contends the surveillance angle impeaches the victim's testimony as to how the robbery occurred.[39]

The state court properly found that the evidence was not suppressed.    The defense knew about the evidence long before trial.    In fact, defense counsel requested and received a copy of the disc containing all of the surveillance from the incident prior to trial.    The record reflects that during the suppression hearing held in February 2009, defense counsel asked the state prosecutor for a copy of the surveillance video and he agreed to provide one.[40] Detective Richard Broussard of the Jefferson Parish Sheriff's Office was tasked with transmitting the copy to the defense.    He testified at the post-conviction hearing that he was a Code Six investigator who assisted the District Attorney's Office in judicial processing. He worked with the Assistant District Attorney in Cambrice's case.    In that capacity, he was tasked with making a complete copy of the surveillance video disc to turn over to the defense. He testified that he copied all three files from the original disc, played it and confirmed that all files from the original were copied correctly, and delivered it to defense counsel's office prior to trial.[41]    In fact, he even confirmed that both defense counsel and Cambrice viewed the disc the morning of trial before a jury was selected.    Broussard played it for them at the

---

[39]  *Id*. at 22-24.

[40]  State Rec., Vol. 4 of 10, Transcript of Suppression Hearing (Feb. 20, 2009), pp. 24-25.

[41]  State Rec., Vol. 8 of 10, PCR Hearing Transcript, pp. 41-46.

defense table because counsel was having software issues with his laptop.[42]    Broussard was asked if he showed Cambrice all of the files that were on that disc.    He replied, "[e]verything that was on that disc was shown to him."[43]    It is not disputed that during trial only the surveillance video file from the Cam 3 angle was played for the jury, but the entire disc was introduced into evidence as S-4.[44]    The same exhibit, S-4, was later designated as a joint exhibit, JT-1, at the post-conviction evidentiary hearing held June 24, 2015.[45]

The record shows the surveillance at issue was provided to the defense upon request. The defense clearly had the evidence in its possession prior to trial.    Cambrice's claim boils down to nothing more than his subjective and unsupported assertion that he personally was unaware that the additional surveillance footage was contained on the disc.    That conclusory allegation certainly does not prove that the prosecutor suppressed the evidence.

The state court's finding that the evidence was not withheld under these circumstances is not contrary to or an unreasonable application of clearly established federal law as set forth by the United States Supreme Court.[46]    Cambrice has failed to demonstrate

---

[42]    *Id*. at 44-46.

[43]    *Id*. at 45.

[44]    The video from Cam 3 was played for the jury.    State Rec., Vol. 5 of 10, Trial Transcript (Day 1), p. 98.    The other two files contained on the disc, *i.e.*, still photographs from Cam 2 and Cam 3, "upon the State's information and belief," were not shown to the jury. Rec. Doc. 11, p. 13.

[45]    State Rec., Vol. 8 of 10, PCR Hearing Transcript, p. 40.

[46]    Because the surveillance material was not "suppressed," this Court need not reach

that the state court's decision denying his *Brady* claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).    He is not entitled to habeas relief on this claim.

B. *Error during Post-Conviction Evidentiary Hearing*

Cambrice claims that the state district court failed to conduct the post-conviction evidentiary hearing in compliance with the purpose of the Louisiana Fifth Circuit's remand order.    The appellate court ordered an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 930(A), finding "questions of fact concerning the video surveillance footage at issue that cannot be resolved by summary disposition."    Cambrice argues that the state district court misconstrued the order and thereby improperly limited the scope of the evidentiary hearing on his post-conviction claims for relief.

To the extent he suggests he is entitled to federal habeas relief on a claim that the state district court misapplied or misconstrued a state-court order under state law, that claim is not grounds for federal habeas corpus relief.    Such relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.    28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119 (1983).    Cambrice

_____

the issue of whether the disc file was "material."    *See e.g.*, *Augustine v. Vannoy*, 16-1191, 2017 WL 2937955, at *11 n. 14 (E.D. La. Mar. 7, 2017) (citing *United States v. Graham*, 484 F.3d 413, 418 (6th Cir. 2007) ("Because the evidence upon which Graham bases his *Brady* claim was not suppressed by the Government, we need not reach the materiality prong of the *Brady* analysis.").

fails to present a federal constitutional question for review.    He argues only that the state district court wrongly interpreted the state appellate court's remand order when conducting the evidentiary hearing.    The state courts rejected that purely state-law claim raised during post-conviction proceedings.    In denying the claim, the Louisiana Supreme Court cited favorably the Louisiana Fifth Circuit's holding, "[o]ur review of the transcript does not reveal that the trial court failed to conduct the evidentiary hearing in compliance with the Court's purpose on remand..." [47]    Thus, to the extent he argues that the state district court misconstrued the remand order under state law, Cambrice has not stated a cognizable federal claim.

Further, to the extent he may be attempting to assert a federal due-process claim related to the state district court's actions or rulings on collateral review, such an alleged error falls outside the scope of federal habeas review.    Clearly, this challenge is based on his perceived infirmities in the state-court collateral-review proceedings.    However, "[i]t is well-settled that 'infirmities in state habeas proceedings do not constitute grounds for federal habeas relief.' "    *Henderson v. Cockrell*, 333 F.3d 592, 606 (5th Cir. 2003) (quoting *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)).    An attack on a state post-conviction proceeding does not entitle a petitioner to federal habeas relief with respect to his conviction because it "is an attack on a proceeding collateral to the detention and not the

---

[47]    *State v. Cambrice*, 15-KP-2362 (La. 10/17/16), 202 So.3d 482; *see also* State Rec., Vol. 8 of 10, p. 2249, *State v. Cambrice*, 15-KH-665 (La. App. 5 Cir. 11/30/15).

detention itself."    *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987).    Thus, his claim related to the post-conviction evidentiary hearing does not warrant federal habeas relief.

### C. Ineffective Assistance of Trial Counsel

Cambrice claims that trial counsel was ineffective for failing to investigate fully and adequately present his defense of actual innocence.    He argues that counsel delayed in obtaining and reviewing critical surveillance video that would have supported Cambrice's defense that he merely paid for gas and left the store.    The Louisiana Supreme Court issued the last ruling on post-conviction review, and concluded he failed to establish that he received ineffective assistance of counsel under the *Strickland* standard.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected his ineffective-assistance-of-counsel claims on the

merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).    For the following reasons, the state court's determination is neither contrary to, nor an unreasonable application of, clearly established federal law.

Cambrice argues that trial counsel failed to conduct "*any* substantial investigation into the contents of the surveillance video and its ability to provide corroborating evidence of petitioner's assertion that he is actually innocent of the offense for which he is accused."[48] "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."    *Strickland*, 466 U.S. at 691.    "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."    *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).    Notably, the defense did not present testimony from trial counsel at the post-conviction hearing

---

[48]    Rec. Doc. 4, p. 36.

regarding his knowledge, or lack thereof, with respect to the purportedly suppressed exculpatory evidence.

Furthermore, Cambrice concedes defense counsel sought discovery and specifically requested a copy of the surveillance evidence well before trial.   The record reflects timely discovery motions by the defense followed up with a specific request for the evidence during the suppression hearing in February 2009.[49]   As established at the evidentiary hearing, Detective Broussard delivered a copy of the disc to defense counsel's office prior to trial.[50] Defense counsel had access to all files from the video surveillance contained on the disc and had ample opportunity to view it before trial.   Moreover, Broussard testified that he played every file on the disc for defense counsel and his client on the morning of trial.   The fact that defense counsel experienced problems when he tried to play the disc on his laptop in court the first morning of trial hardly proves that counsel came to court unprepared having never previously viewed the disc, as Cambrice asserts.   The state-court record confirms that following reasonable investigation and discovery, having reviewed all of the contents of the disc and, in particular, the video surveillance clip that would be offered by the prosecution, trial counsel zealously defended Cambrice at trial.

Counsel presumably made a tactical decision not to show the jury additional still photographs from Cam 2 or Cam 3, beyond the brief video clip and few still photos presented

---

[49]   State Rec., Vol. 4 of 10, R.pp. 1228-1229 (Suppression Transcript at 24-25).

[50]   State Rec., Vol. 2 of 10, R.p. 752 (PCR Transcript at 45).

by the State.    Trial counsel wisely sought to limit jurors to the brief eight or nine-second segment they were allowed to watch during trial.[51]    He questioned everything purportedly depicted on the short tape during closing argument in challenging the State's proof and creating doubt in their minds:

> Let's talk about – and you know, you saw – you saw the tape. Did you really see him get any money back? Did you see him take anything? Did you see it? Because that – that's supposed to be on the tape too. I didn't actually see it. The tape is eight (8) seconds long, and I really don't see it.[52]

He also maintained that no gun could be seen in the video and used the evidence to establish a timeline by which to challenge the accuracy and veracity of the victim's testimony.    Given the evidence, he questioned that a robbery occurred at all, and urged the jury not to find him guilty of a lesser offense, but rather, to find him simply not guilty.[53]    Despite the rather daunting evidence against Cambrice, including his own confession, surveillance video of him at the time of the incident, and testimony of the victim clerk, defense counsel obtained a responsive 10-2 verdict of first-degree robbery rather than armed robbery as charged. Under the circumstances, defense counsel can hardly be questioned in hindsight about the strategic judgments he made with respect to the surveillance evidence presented at trial.

---

[51]    State Rec., Vol. 6 of 10, Trial Transcript, pp. 208-210; R.pp. 1657-1659.    The jury was not given S-4 during deliberations and was not allowed upon request to see the video clip again.

[52]    State Rec., Vol. 6 of 10, Trial Transcript, p. 160; R.p. 1609.

[53]    State Rec., Vol. 6 of 10, Trial Transcript, pp. 164, 176; R.pp. 1613, 1625.

Indeed, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."    *Strickland*, 466 U.S. at 689.

Cambrice suggests that had his counsel viewed the video surveillance earlier, he could have asserted Cambrice's innocence at trial.    However, a review of the record reveals that counsel did present a cogent defense at trial that Cambrice did not commit a robbery.    He was able to effectively cross-examine and challenge the victim's testimony that Cambrice had a gun and committed a robbery using the evidence presented.    Furthermore, when the alleged "newly discovered" still frames were played at the post-conviction evidentiary hearing, Cambrice's testimony made clear that any exculpatory information came from his own conclusory, subjective view of the photographs rather than any credible objective evidence.[54]    Thus, Cambrice has not shown with specificity that further investigation would have altered the outcome of the trial, especially considering the sheer weight of the other evidence against him.

For the foregoing reasons, Cambrice has not demonstrated that the state court's decision rejecting the ineffective-assistance-of-counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme

---

[54]  State Rec., Vol. 8 of 10, PCR Hearing, pp. 23-33; R.pp. 2303-2313.

Court of the United States.    He is not entitled to relief on this claim.[55]

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Cambrice's Motion for Stay (Rec. Doc. No. 13) be **DENIED.**

It is further **RECOMMENDED** that Cambrice's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

---

[55] In Cambrice's opposition to the State's response, he suggests the record should be expanded to include additional evidence of Detective John Carroll's "coercive techniques in interrogation." Rec. Doc. 12, p. 4.    The Court declines that invitation.    *See* Rec. Doc. 7, 8 (denying motion as premature) and Rec. Doc. 12, p. 4.    Because of the Supreme Court's stringent limitation on evidentiary hearings in habeas corpus adopted in *Cullen v. Pinholster*, 563 U.S. 170 (2011), that evidence may not be submitted directly to this Court for the first time.    Furthermore, that evidence relates to claim three, which is not properly before this Court.

consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[56]

New Orleans, Louisiana, this   21st   day of   November   , 2017.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[56] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.